## SHELDON NORTON *vs.* ALBERT HUXLEY.

Under the Rev. Sts. *c.* 74, § 3, as under the *St.* of 1834, *c.* 182, § 5, representations concern-
ing the dealings or trade of a third person need not be in writing, unless made with the
intent that such person may obtain credit, money or goods therefor.

A verdict and judgment for the defendant, in an action of contract upon a promise of the
defendant to accept an order drawn upon the defendant in favor of the plaintiff, brought
by one who had assigned to the plaintiff an unfinished contract of work for the defend-
ant, are no bar to an action of tort by the plaintiff against the defendant, for inducing
the plaintiff to take such assignment by false and fraudulent representations as to the
amount remaining due from the defendant to the former contractor.

A declaration in tort alleged that the plaintiff assumed the prosecution of a contract of
work, commenced for the defendant by another person, (who had become unable to
carry it on,) being induced to do so by the false and fraudulent representations of the
defendant that there would be no risk in the plaintiff's undertaking the work, and that
the defendant had sufficient funds in his hands due to the former contractor. *Held*, that
this declaration was supported by evidence that the defendant, upon being inquired of
in behalf of the plaintiff, said that there would be funds enough to complete the under-
taking if the former contractor went on and finished it, and that the plaintiff was thereby
induced to go on with the work, though the plaintiff testified that he did not mean to
assume the job, but only to assist the defendant.

ACTION OF TORT for false and fraudulent representations
The declaration alleged "that in the year 1852 Henry Thomp-
son was employed in the coaling of wood of the defendant in
the town of New Marlborough upon the land of the defendant,
and the defendant had agreed to make advances to the said
Thompson as the work progressed, said advances not to exceed
one half of the amount to which said Thompson would be
entitled upon the completion of said contract, reserving in the
defendant's hands the residue of the wages of said Thompson;
and the said Thompson became unable to go on with the prose-
cution of said contract with the defendant; and this plaintiff
made application to the defendant, asking information of him in
relation to the said contract, and how far and to what extent
the plaintiff could safely be interested in the prosecution of the
same; and the said defendant, to induce the plaintiff to enter
upon the further prosecution of said contract, falsely, fraudu-
lently, knowingly and deceitfully represented to the plaintiff
substantially that there would be no risk in going upon said
job and prosecuting it; that he had in his hands reserved funds

to pay for all assistance; that he did not care whom he paid, if the wood was burned into coal, and that he would retain in his own hands the funds which he had reserved; and the said plaintiff, confiding in these representations of the defendant, and believing the same to be true, took upon himself the further prosecution of the said contract, and made large outlay in labor, money, material and other supplies in and upon said contract, and caused to be delivered to the defendant large quantities of coal of great value; and in fact the said representations of the defendant were false, and the defendant had no reserved funds in his hands, and had greatly overpaid the said Thompson for the work which had been theretofore performed upon said contract; and by means of the premises the plaintiff has been greatly injured and defrauded." Trial in the court of common pleas in Berkshire at February term 1858, before *Mellen*, C. J., who signed this bill of exceptions:

" The plaintiff's counsel, in opening, made this statement: Thompson had a coal job with the defendant, on the defendant's land. Thompson became embarrassed, and applied to plaintiff to aid him. The plaintiff applied to the defendant to ascertain the situation of the contract. The defendant stated that some thirteen thousand to fifteen thousand bushels of coal had already been drawn in; that he had examined the coal book and found such to be the fact; that one half of the money on the contract had been retained by him; that if the contract was completed, there was an abundance to pay Thompson's hands, and a good deal more. Relying upon these statements, the plaintiff took an assignment of the contract from Thompson, and completed the job. These representations were not true. They were verbal.

" The defendant objected that these representations being verbal, no action could be maintained upon them. The court sustained the objection. A verdict was thereupon returned for the defendant. To which ruling the plaintiff excepts."

These exceptions were argued and decided at Lenox at September term 1858.

*J. E. Field*, for the plaintiff.

Norton *v.* Huxley.

*I. Sumner,* for the defendant, cited Rev. Sts. *c.* 74, § 3; *Lyde v. Barnard,* 1 M. & W. 107; 2 Steph. N. P. 1303; 1 Smith's Lead. Cas. 80, note to *Chandelor* v. *Lopus.*

DEWEY, J. As an original question, it might be plausibly urged that the Rev. Sts. *c.* 74, § 3, were intended to bar all actions for any verbal misrepresentations as to the character, credit, dealings or trade of a third person, under any and all circumstances in which they might be made; the words of limitation, found in the earlier statute of 1834, *c.* 182, § 5, to such representations as were made "to the intent or purpose that such person may obtain credit, money or goods thereupon," being omitted in the revised statutes.

But the court, in the case of *Medbury* v. *Watson,* 6 Met. 246, have held, that the Rev. Sts. *c.* 74, § 3, was to be construed as only a reënactment of the *St.* of 1834, *c.* 182, § 5. That decision substantially settles the present case. The representations required to have been made in writing are only those made with the intent that the person, concerning whom they are made, may obtain credit, money or goods thereupon.

The case shown by the plaintiff was not a case of any representations made by the defendant with intent that Henry Thompson "might obtain money, credit or goods thereupon" of the party to whom these representations were made. The plaintiff had under consideration the question of taking an assignment of an existing contract between Thompson and the defendant, for the burning of coal by Thompson, which had been executed in part, and of proceeding to perform the residue of the contract at his own cost and charges. With this purpose in view, the plaintiff applied to the defendant to ascertain how far the contract had been executed by Thompson, and what further remained to be done, and what amount of funds remained in the hands of the defendant to be accounted for with the party who should assume the contract, as succeeding Thompson therein.

The representations alleged to have been made by the defendant, it is true, in one sense, are representations as to the dealings of Thompson, but not to the intent that thereby money

or goods should be paid or delivered to Thompson, or that the
plaintiff should give him a credit for any goods or money lent
or advanced, but in reference merely to the plaintiff's taking an
assignment of the contract, and becoming interested as a party
thereto in the place of Thompson.

It may be difficult to mark with precision the exact limits of
the operation of the statute under consideration.   It is suffi-
cient, in the present case, to say that these representations were
not of such a character as are required by the statute to be in
writing, to be made the subject of an action.   They were repre-
sentations as to particular facts in the knowledge of the defend-
ant, which, as they might exist or not, might influence the
plaintiff in reference to his taking an assignment of Thompson's
contract with the defendant; but not representations made with
the intent stated in the statute.            *Exceptions sustained.*

A new trial was had in the court of common pleas at Octo-
ber term 1858, before *Bishop*, J., at which the plaintiff introduced
evidence tending to show that the defendant had made a con-
tract with Thompson to make for the defendant twenty thousand
bushels of charcoal from the defendant's wood, and deliver it at
a certain furnace; that one Howe afterwards informed the de-
fendant that Thompson could not go on without help, and that
the plaintiff and Howe would help him if they could have their
pay; that the defendant said, " He should not agree to pay
any of Thompson's debts ; there would be funds enough in his
hands to carry out the undertaking, and a handsome sum over,
if Thompson went on and finished it; he was not to pay but
one half until the work was done, and had paid but little more
than half, and, if Thompson left, there would be funds enough to
carry out the contract; he had been on when the work was
being done, and had seen the coal book, and from thirteen thou-
sand to fifteen thousand bushels had been delivered ; he did not
care whom he paid after the wood was burnt, and after it was
burnt he would accept an order from Thompson ; " that Howe
shortly afterwards informed the plaintiff what the defendant
had said ; and the plaintiff was thereby induced to take from

Thompson an assignment in writing of the contract, and gave the defendant written notice thereof, and afterwards went on with the job, (the plaintiff testifying, however, " that he did not assume, on the part of Thompson, the contract with the defendant, but only meant to assist the defendant to burn the wood cut, and not to take on himself Thompson's obligations to the defendant,") and furnished labor, materials and money to a considerable amount, for which Thompson gave him an order upon the defendant, which the defendant refused to accept, or to pay to the plaintiff, alleging that he owed Thompson nothing, but that the latter was indebted to him; and that such was the fact; and that no payment had been made by the defendant to Thompson, after the assignment by Thompson to the plaintiff.

The defendant contended that this evidence did not support the declaration. But the court ruled that the evidence, if believed, would sustain the declaration.

The defendant then offered to show that the plaintiff had brought an action of contract against the defendant to recover for his services, materials and money furnished to Thompson, declaring upon a promise of the defendant to accept said order given by Thompson to the plaintiff, and upon the common counts; which action had terminated in a verdict and judgment for the defendant. The defendant offered the record of that case in evidence, and contended that that judgment was a bar to this action; and also offered to prove that the matters embraced in that action were the same as in this. But the court ruled that that judgment was not a bar to this action, and excluded the evidence.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*Sumner & J. D. Colt,* for the defendant, cited, to the point of variance, 1 Chit. Pl. (6th Amer. ed.) 285; *Bristow* v. *Wright,* 2 Doug. 667; *Spurrier* v. *Elderton,* 5 Esp. R. 3; *Weall* v. *King,* 12 East, 452; *Jerome* v. *Whitney,* 7 Johns. 321; and to the point that the former judgment was a bar, *Embury* v. *Conner,* 3 Comst. 522; *Gardner* v. *Buckbee,* 3 Cow. 120; *Voorhees* v. *Bank of United States,* 10 Pet. 449; *Eastman* v. *Cooper,* 15 Pick. 276

*Norton* v. *Doherty*, 3 Gray, 372; 2 Smith's Lead. Cas. 445, note to *Doe* v. *Oliver*.

*Field & H. L. Dawes*, for the plaintiff.

MERRICK, J.  Two exceptions were taken by the defendant upon the trial; one in relation to the effect of a judgment rendered in a former suit between these parties, and the other as to the sufficiency of the evidence produced to support the plaintiff's declaration.  The presiding judge ruled that the evidence, if believed by the jury, would sustain the declaration, and that the judgment relied upon did not constitute a bar to the maintenance of this action.  The questions now to be determined are whether these rulings were respectively correct.

The principle is well settled, that a judgment in a former suit between the same parties is a bar to a subsequent action only when the point or question in issue is the same in both. The judgment is conclusive in relation to all matters in the suit which were put in issue; but has no effect upon questions not involved in it, and which were not then open to inquiry, or the subjects of litigation.  *Sage* v. *McAlpin*, 11 Cush. 165.  *Eastman* v. *Cooper*, 15 Pick. 276.  *Bigelow* v. *Winsor*, 1 Gray, 299. *Foote* v. *Gibbs*, 1 Gray, 412.  Governed by this principle, it is very plain, upon a comparison of the allegations and cause of action set forth in the former suit, the record of which the defendant produced and offered to give in evidence, with the allegations and cause of action set forth in this, that the points or questions in issue are not the same in the two suits, and consequently that the judgment in the former constitutes no bar to the maintenance of the present action.  It is true that both originated in the same series of transactions, and in the conversations and communications which took place between the parties concerning them.  But the result of the former suit shows that the plaintiff there wholly mistook the effect of what was said by the defendant, and so failed to establish the claim which he then attempted to enforce.  That was an action of contract, in which a promise and a breach of the promise were averred. This is an action of tort, in which the plaintiff alleges that he sustained damage by the wilfully fraudulent representations of

Norton *v.* Huxley.

the defendant. Proof which would fully support the one would have no tendency to maintain the other; for the reason, that the questions involved in the respective issues were essentially unlike. It follows, as a necessary consequence, that the judg-ment in one of them is not competent evidence upon the trial of the other, and cannot have the effect of precluding the plain-tiff from maintaining it. The ruling of the court was to this precise effect, and the record of the former suit was therefore properly excluded from being given in evidence upon the trial · of this.

As to the sufficiency of the evidence, if believed by the jury, to support the declaration, we think the ruling of the court was correct. It amounted to no more than this; that, giving proper effect to the testimony, the conclusion might fairly be deduced from it, that the defendant did make the representa-tions which are set forth in the declaration. The witnesses did not testify that he made use of the precise phrases and expres-sions which constitute the averments in the declaration; but the statements and representations, which they say that he did make, appear to be, in meaning and effect, substantially the same as those of which the plaintiff complains, and which he sets forth as the ground and basis of his action. This seems to us to be the fair, and perhaps it might also be said the necessary result, of an examination and comparison of the alle-gations in the declaration and the statements and testimony of the witnesses; and the court could not therefore sustain the ob-jection taken by the defendant, that, upon the evidence pro-duced, the action could not be maintained. As this is chiefly a question of fact, we do not deem it important or useful here to pursue the argument in relation to it in detail; but it is enough to state in general terms the conclusion to which, upon the examination of the evidence and the ruling upon it, we have arrived. *Exceptions overruled.*